# Hannah Taylor

| | |
|---|---|
| **From:** | Hannah Taylor <​​​​​​​​​​​​​​​​> |
| **Sent:** | Wednesday, January 24, 2024 6:50 AM |
| **To:** | 'Kistner, Timothy (USAMA)'; 'Lisa Hourihan' |
| **Cc:** | 'Porter, Alathea (USAMA)'; ; |
| **Subject:** | RE: US v. Wu - Jury Instructions |

Good morning,

The "true threats" language is appropriate, and required, where the charge of cyberstalking is being submitted to the jury, in part, on theories that Mr. Wu had "intent to harass" or "intent to intimidate." *See* 18 U.S.C. 2261A(2)(B). Mr. Wu does not argue that the cyberstalking statute is facially invalid under the First Amendment, but that this case, as charged and as alleged, raises the possibility of an unconstitutional application of the statute. As such, a jury instruction is required to mitigate the risk of such a result.

As a preliminary matter, the defendant in *United States v. Ackell*, 907 F.3d 67, 71 (1st Cir. 2018), brought only a facial challenge to 18 U.S.C. 2261A(2)(B), and not an as-applied challenge, so any challenge to the jury instructions in that case, and any rejection of that challenge, was made in that context. The *Ackell* court expressly acknowledged that 2261A(2)(B) "could have an unconstitutional application" and recognized the "chilling-effect-related concerns inherent in declining to invalidate a statute that can be applied to violate the First Amendment." *Id.* at 77. However, because "2261A(2)(B) is not a statute that is valid under 'not set of circumstances,'" Ackell's facial challenge to the statute failed. *Id.* But because of the risk of potential unconstitutional application of the statute, the Ackell court also concluded that "we must read 'intent to … harass,' as referring to criminal harassment, *which is unprotected because it constitutes true threats or speech that is integral to proscribable criminal conduct*." *Id.* at 76 (emphasis added). They also applied this conclusion to the term "intimidate" in the statute, where "'interpreting the statute to avoid a serious constitutional threat,' *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001), points to reading the statute as referring to '[i]ntimidation in the constitutionally proscribable sense of the word[, which] is a type of true threat,' *Black*, 538 U.S. at 344." *Ackell*, 907 F.3d at 76.

Where the entirety of the alleged criminal conduct in this case is speech, the "speech integral to criminal conduct exception" does not apply. In *United States v. Sryniawski*, 48 F.4th 583, 588 (8th Cir. 2022), the Eighth Circuit conclude that the defendant's emails could not be speech "integral to the criminal conduct of cyberstalking itself" because "Congress may not define speech as a crime, and then render the speech unprotected by the First Amendment merely because it is integral to speech that Congress has criminalized." *Id*. Thus, "[t]o qualify a speech integral to criminal conduct, the speech must be integral to conduct that constitutes another offense that does not involve protected speech, such as antitrust conspiracy, *Giboney v. Empire Storage & Ice Co.,* 366 U.S. 490, 498 (1949), extortion, *United States v. Petrovic*, 701 F.3d 849, 855 (8th Cir. 2012), or in-person harassment, *United States v. Osinger*, 753 F.3d 939, 941 (9th Cir. 2014)." *Sryniawski*, 48 F.4th at 588 (citations omitted). The *Ackell* court defined speech integral to criminal conduct as "precisely what it sounds like, and [concluding that such speech] is not protected on First Amendment grounds 'merely because the [criminal] conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'" *Ackell*, 907 F.3d at 75 (quoting *Giboney*, 336 U.S. at 502). Thus, the *Ackell* court likewise suggested that speech integral to criminal conduct require some core criminal *conduct* – other than the speech itself – to which the speech relates.

Cases from the Third and Eighth Circuits are also instructive.

In *United States v. Yung*, the Third Circuit stated that "[t]he First Amendment protects at least some speech that persistently annoys someone and makes him fearful or timid. As then-Judge Alito observed: 'There is no categorical "harassment exception" to the First Amendment's free speech clause.'" *United States v. Yung*, 37 F.4th 70, 78 (3d Cir. 2022) (quoting *Saxe v. State College Area School Dist*, 240 F.3d 200, 204 (3d Cir. 2001)). As the court explained, "[t]hough

'non-expressive, physically harassing *conduct* is entirely outside [the First Amendment's] ambit,' 'deeply offensive' *speech* is not." *Yung*, 37 F.4th at 78 (quoting *Saxe*, 240 F.3d at 206).

In *Sryniawski*, the Eighth Circuit observed that, "[e]ven where emotional distress is reasonably expected to result, the First Amendment prohibits Congress from punishing political speech intended to harass or intimidate in the broad senses of those words. The Free Speech Clause protects a variety of speech that is intended to trouble or annoy, or to make another timid or fearful." *Sryniawski*, 48 F.4th at 587. The court went on to provide examples of such offensive speech that the Supreme Court has held to be constitutionally protected, including displaying signs at a serviceman's funeral that read "Thank God for Dead Soldiers," among other signs including a homophobic slur. *Id*. (citing *Snyder v. Phelps*, 562 U.S. 443 (2011)). The court also noted that the Supreme Court "declared unconstitutional a criminal ordinance that prohibited the display of burning crosses, Nazi swastikas, and other symbols that the perpetrator had reasonable grounds to know would arouse 'anger, alarm or resentment in others on the basis of race, color, creed, religion or gender.'" *Id*. (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992).

In sum, *Ackell*, as well as cases from other jurisdictions, stand for the proposition that the risk of an application of 2261A(2)(B) that violates the First Amendment is greatest where a defendant might be convicted under the prongs of "intent to … harass, or intimidate." These prongs are implicated here. *Ackell* instructs that "intent to harass" and be limited to true threats and speech integral to criminal conduct, and that "intent to intimidate" be limited to true threats. 907 F.3d at 76. As discussed above, speech integral to criminal conduct does not apply where, as here, the entirety of the alleged criminal conduct is speech. Thus, the jury must be given a true threats instruction.

Thank you,

Hannah Taylor
Hedges & Tumposky, LLP
88 Broad Street, Suite 101
Boston, MA 02110
T) (617) 722-8220
F) (617) 507-8116
C) ████████
[www.HTLawyers.com](www.HTLawyers.com)



The information contained in this electronic message is legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If you are not the intended recipient, your receipt of this communication is not intended to waive any privilege. You are hereby notified that any dissemination, copying or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify the sender, permanently delete the original message and any attachments from your system, and destroy all copies of of the original message and attachments.



**From:** Kistner, Timothy (USAMA) <████████████████gov>
**Sent:** Tuesday, January 23, 2024 6:06 PM
**To:** Lisa Hourihan <████████████████>
**Cc:** Porter, Alathea (USAMA) <████████████████>; ████████████████████████████ '████████████████; 'htaylor' <████████████████>
**Subject:** US v. Wu - Jury Instructions

Good evening-

As discussed earlier, we do not believe that the "true threats" language should be contained within the jury instructions on Count 1. To start, there is no requirement that any of the acts of the course of conduct be a include a serious

expression of an intent to commit an act of unlawful violence. *See Ackell*, 907 F.3d 67 (1st Cir. 2018) (affirming conviction of an individual who obtained compromising photographs of a minor, and told her that he would disseminate the photographs if she ceased his online relationship with him). *See also U.S. v. Sayer*, 748 F.3d 425, 434 (1st Cir. 2014) (course of conduct in which the defendant created online sexual advertisements in order to deceptively entice men to visit the victim's home was not protected). While true threats are one type of speech that may be proscribed, it is not the only one. Others include obscenity, defamation, fraud, incitement, and speech integral to criminal conduct. *U.S. v. Stevens,* 559 US 460, 468-69 (2010).

As the First Circuit stated in *Ackell*, "2261A contains no requirement that the acts making up the course of conduct themselves be illegal." *US v. Ackell*, 907 F.3d 67 (1st Cir. 2018). As a result, *any* instruction that contains a reference to "true threats" in a discussion of the requirements for the "course of conduct" is likely to cause jury confusion, because there is no requirement that each act within the course of the conduct be illegal – let alone a true threat. As such, we request that the language be omitted in its entirety from the jury instructions.

I am also attaching the jury instructions from *Ackell*, which do not include any true threats or First Amendment language, either generally or within the course of conduct language (*see* p. 24).

To the extent that Judge Casper is inclined to keep a reference to "true threats" within the bounds of the Count 1 instructions, we would request that they be included as a separate instruction as follows:

> There is no requirement that any of the individual acts making up the course of conduct are, themselves, illegal. In other words, you may find that the Defendant engaged in a course of conduct without finding that the particular acts of that course of conduct, taken alone, were illegal.
>
> To the extent that you find that the course of conduct involves verbal communications or speech, I instruct you that the First Amendment to the United States Constitution permits restrictions upon the content of speech in a few limited areas. These include true threats, obscenity, defamation, fraud, incitement, and speech integral to criminal conduct.
>
> True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or a group of individuals. True threats subject individuals to fear of violence and to the kinds of disruption that such fear engenders.
>
> Speech integral to criminal conduct is precisely what it sounds like. It is not protected on First Amendment grounds merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.

The last paragraph includes language taken from *Ackell*, 907 F.3d 67 at 75.

**Timothy H. Kistner**
Assistant United States Attorney
U.S. Attorney's Office, District of Massachusetts
1 Courthouse Way, Suite 9200
Boston MA 02210

## CERTIFICATE OF SERVICE

      I, Michael Tumposky, hereby certify that, on this January 24, 2024, I served a true copy of the above document on all counsel of record through the electronic case filing system.

/s/ Michael Tumposky
Michael Tumposky
